# CHARLESTON.

STATE *ex rel.* C. C. TESTERMAN v. S. T. LAMBERT, MAYOR AND OTHERS.

Submitted December 16,. 1918.   Decided December 16, 1918. Opinion filed January 14, 1919.

1. MANDAMUS—*Appointment of Election Officers—Municipal Council.*
   Mandamus lies to compel a municipal council to appoint election officers recommended by the proper officer of a political party which, under the provisions of law, is entitled to representation on the election board, and where there is a disputed succession in the official personnel of such party, and there is no higher authority within the party to which such controversy can be submitted for determination, the court will, upon the application for the writ of mandamus, decide which of the two claimants is entitled to nominate such election officers.  (p. 146).

2. ELECTIONS—*Appointment of Commissioners—Challengers and Poll Clerks.*
   Under the general election law, upon the municipal council, in a municipal election, devolves the duty to appoint commissioners of election and challengers upon the recommendation of the chairmen of the two leading political parties, but such council has no authority to appoint poll clerks.  (p. 147).

Original mandamus by the State, on relation of C. C. Testerman, against S. T. Lambert, Mayor, and others.

*Peremptory writ of mandamus awarded.*

B. *Randolph Bias,* for relator.
*Goodykoontz & Scherr,* for respondents.

RITZ, JUDGE:

The relator applied :for a writ of mandamus to compel the respondents composing the common council of the town of

Matewan to appoint certain election officers as representatives of the party whose candidate for mayor he claims to be.

Prior to December, 1917, there were two parties in the town of Matewan, one known as "The Citizens Party" and the other as "The Independent League Party." It is admitted that a convention of the Citizens party was held early in December, 1917, and that at this convention candidates were nominated to be voted for at the election to be held in the January following, and it is contended by the relator that said convention also selected an executive committee to represent said party until the holding of the next convention of the party. The respondents on the other hand contend that no such action was taken, and that R. W. Buskirk, who it is conceded was the chairman of the party prior to this convention, held over. The committee, which relator contends was selected at this convention, subsequently met and elected a chairman and secretary, and relator contends took charge of the campaign for the election of the candidates nominated by the Citizens party. Buskirk also attempted to exercise the duties of chairman of the party during this campaign. The election resulted in the defeat of the candidates of the Citizens party. Subsequently Buskirk died, and by his death, according to the contention of the respondents, the Citizens party was left without officers, while the relator claims that this only made a vacancy on the committee of that party, Buskirk being one of the committee named at the convention in December, 1917. Subsequently another member of the committee died, making two vacancies thereon. The chairman thereupon called a meeting for the purpose of filling these vacancies, which meeting was held and the vacancies filled, and the committee then called a convention to nominate candidates of the Citizens party for the election to be held in January, 1919. The respondent Lambert and some others, claiming that the Citizens party had no organization after the death of Buskirk, called a mass meeting of that party for the purpose of selecting a chairman to succeed Buskirk, which meeting was held and such a chairman chosen. The man so chosen chairman then called a convention of the Citizens party to nominate candidates to be voted for at the

election to be held in January, 1919. It will thus be seen that two conventions of this party were called for the same purpose. The convention first above referred to met and nominated the relator as its candidate for mayor, and also nominated a candidate for the office of recorder and candidates for councilmen. It also selected an executive committee, and this committee subsequently met and elected a chairman and secretary. The chairman thus selected certified to the town council the names of certain parties whom he desired appointed as commissioner, clerk, and challenger to represent his party in the January, 1919, election. The convention of the ''Citizens Party'' called by the chairman selected by the respondent Lambert and his associates also met and nominated candidates to be voted for in the municipal election, and the chairman selected by this convention also certified to the common council the names of certain parties to be appointed as election officers to represent the Citizens party in the election. Immediately upon the adjournment of this latter convention, a convention of the Independent League party was held in the same hall, and the same candidates nominated that had been selected by the last named convention of the Citizens party. At a meeting of the council held to appoint election officers, that body declined to recognize the relator's party as the Citizens party, and appointed the election officers certified by the chairman selected at the convention at which the respondent Lambert was nominated.

It may be observed that it appears without contradiction that Buskirk, who was undisputed chairman of ''The Citizens Party'' until the convention of that party held in December, 1917, had at that time transferred his allegiance to the Independent League Party. It is shown without contradiction that before the holding of the convention of the Citizens party in December, 1917, Buskirk certified to the council the names of parties to be appointed as election officers to represent the Citizens party, all of whom were in sympathy with and supporters of the opposing party. The respondents contend that members of the Citizens party called the mass meeting to select a successor to Buskirk, its deceased chairman. The record discloses the names of only two of the par-

ties who called this meeting, one of them, the respondent Lambert, who was elected by an opposition council to fill a vacancy in the office of mayor, and who is the candidate of that opposition party for that office in the coming election, and the other who is openly co-operating in removing any opposition to the Independent League candidates. Can these men be classed as belonging to the Citizens Party? The executive officers of any political party must be members of it, and it may be said that only those voters who believe in its principles and support its candidates are members of a particular political party. The fact that a voter at one time affiliated with a certain party does not prove that he is a member of it when, at the particular time at which his party affiliations are brought in question, he is devoting his energies to an effort to compass the defeat of the candidates of the party to which he professes to belong. The real spirit of our election law seeks to have elections conducted by officers representing the parties opposed to each other. It was never intended that one party in a community, where its members are more than double that of the opposition, can divide itself into two parties, each nominate the same candidates, and because it polls more votes in each of its branches than the opposition, exclude such opposition entirely from official participation in the election.

It is contended here that inasmuch as the common council has decided this question, this court will not take cognizance of it, and the cases of *Smith* v. *County Court,* 78 W. Va., 168 and 259; *Buxton* v. *Boggess,* 67 W. Va., 679; *Republican Executive Committee* v. *County Court,* 68 W. Va., 133; and *Kump* v. *McDonald,* 64 W. Va., 323, are relied upon. Those cases hold that when a dispute arises in a political party which has a tribunal of its own to which appeal can be made, this must be done, and the decision of such tribunal is final. In this case the only decision made as to who is entitled to represent the Citizens party was by the common council, admittedly composed of members of the Independent League party, whose political interest is in the destruction of its adversary. It does not appear that there exists in the Citizens party any superior authority to whom

this question of disputed succession can be submitted, and for that reason the authorities referred to are inapplicable.

But · it is insisted that even though the persons recognized by the respondents as the officers of the Citizens party do not properly represent that party, this would not give the relator the relief he asks unless he shows that the persons he contends are the officers of that party are such in fact; and this is true. The relator must show his right. The fact that the persons recognized by respondents may be getting something to which they are not entitled can make no difference to the relator unless he is prejudiced thereby. Unless the committee claiming to have been selected by the Citizens party at the December, 1917, convention was in fact so selected, then it had no more authority to act for that party than had the committee recognized by respondents. As to what happened at the December, 1917, convention, there is some conflict. Those best in a position to know say this committee was selected as an executive committee for the party, while a number of others say it was simply a nominating committee. The officers of that convention it is shown made a minute of what transpired a very few days thereafter, and this original paper is introduced. It bears the ear marks of genuineness upon its face, and its authenticity is vouched for by the secretary of the convention who made it. It shows that the party at that time did select an executive committee as contended by the relator, and we think, supported as it is, it is evidence of such a character as to conclude this question, especially when considered with the fact, well known at the time to the Citizens party, that Buskirk, who claimed to be chairman of it, was acting with the opposition.

The respondents, at the request of the chairman recognized by them, undertook to appoint a commissioner of election, a poll clerk, and a challenger to represent the Citizens party, and the writ is asked to compel them to appoint the nominees of relator's committee to these offices. The council under the provision of § 85 of ch. 3 of the Code, is required, in case of a municipal election, to perform the duties devolving upon the county court in a general election, and

unquestionably the appointment of commissioners of election is such duty. But how about the appointment of poll clerks and challengers? Section 8 of ch. 3 provides for the appointment of poll clerks by the election commissioners. It is true § 26a4 of ch. 3, Barnes' Code, 1918, provides for the appointment of both commissioners of election and poll clerks by the county court in a primary election, but this does not purport to change the law then in existence providing for the appointment of such officers in other elections. We are therefore of the opinion that the action of the council in appointing poll clerks was without authority and is void. Provision was made for the appointment of challengers by act of the legislature now contained in § 48 of ch. 3 of the Code. Under this section such challengers were appointed by the chairmen of the respective parties. In 1905 the legislature revised the election law, and in a provision now contained in § 93 of ch. 3, provided for the appointment of such challengers by the county court, upon the nomination of the chairmen of the two leading political parties. This act did not expressly amend § 48, but it was a general revision of the election law, and provided for the repeal of all acts or parts of acts inconsistent with it. It is therefore clear that so much of § 48 as provides for the appointment of challengers is superseded by the provisions of § 93 in regard thereto.

The writ is therefore awarded requiring respondents to appoint the persons named in relator's petition to the offices of commissioner and challenger, to represent the Citizens party in the municipal election to be held in January, 1919.

*Peremptory writ of mandamus awarded.*