# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-05-00318-CV

**Lydia Garza Saenz, Appellant**

**v.**

**Martin Garza, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. GN402143, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

This is an appeal from a judgment that purports to declare a Texas corporation dissolved and determine ownership of the corporate assets. The judgment was based on claims asserted by one of the corporation's 50% shareholders. Because the district court lacked subject matter jurisdiction over these claims, we vacate the district court's judgment and dismiss the action for want of subject matter jurisdiction.

## BACKGROUND

Appellant, Martin Garcia, and appellee, Lydia Garcia Saenz, were both directors and 50% shareholders of a Texas corporation, Starr Properties, Inc.[1] Martin was designated as the

---

[1] The order on appeal is a summary judgment, so we derive the background facts from the summary judgment record.

The record is inconsistent regarding whether Lydia's surname is Saenz or Garza, and it does

corporation's secretary and registered agent, and Lydia its president. Incorporated in 1993, Starr

Properties possessed assets including a 1.772-acre tract along Highway 83 in Rio Grande City, Starr

County, and a 1994 lease of that property.

On February 13, 1996, the Secretary of State administratively forfeited Starr

Properties's corporate charter for failure to pay franchise taxes. *See* Tex. Tax Code Ann. § 171.309

(West 2002).[2]  Over seven years later, on March 13, 2006, Lydia, as Starr Properties's president,

filed with the Secretary of State an "Application for Reinstatement and Request to Set Aside

Revocation or Forfeiture" on behalf of Starr Properties.  Lydia filed with the application a

certification from the Comptroller that Starr Properties had paid all franchise taxes through

---

not indicate whether Martin Garza and Lydia Garza Saenz are related, though the articles of incorporation specified different mailing addresses for each.  To avoid confusion, we will identify the parties by their first names.

[2] Section 171.309 of the tax code authorizes the Secretary of State to forfeit a corporate charter if:

> (1) the secretary receives the comptroller's certification under Section 171.302 of this code;
>
> (2) the corporation does not revive its forfeited corporate privileges within 120 days after the date that the corporate privileges were forfeited; and
>
> (3) the corporation does not have assets from which a judgment for any tax, penalty, or court costs imposed by this chapter may be satisfied.

Tex. Tax Code Ann. § 171.309 (West 2002).  Tracking this language, the Secretary's "Determination of Forfeiture Pursuant to Section 171.309, Texas Tax Code Annotated" states that Starr Properties's corporate charter had been forfeited because the Comptroller notified the Secretary of State that the corporation "failed to file a current year franchise tax report to establish the existence of assets from which a judgment for the franchise taxes, penalties and court costs may be satisfied" and that it had "failed or refused to revive its right to do business." *See id.*

December 31, 2002. *See id.* § 171.313(a).[3] Lydia testified that, because a similarly named "Star

Properties, Inc." had been incorporated during the forfeiture period, the corporation's original name

of "Starr Properties, Inc." was unavailable for use. She then filed handwritten "Articles of

Amendment" changing the corporate name from Starr Properties, Inc. to "Rio Starr Properties, Inc."

*See id.* § 171.315.[4] The articles, signed by Lydia as president, stated:

1. The name of the corporation is <u>Starr Properties, Inc.</u>

2. The new name of the corporation is <u>Rio Starr Properties, Inc.</u>

3. The number of shares outstanding and entitled to votes: <u>all</u>
                        The number of shares voting for: <u>all</u>
                                                against: <u> none</u>

Date of adoption 3/13/2003

*See* Tex. Bus. Corp. Act Ann. arts. 4.02 (West Supp. 2006) (procedures to amend articles of

incorporation), .04-.05 (West 2003 & Supp. 2006) (contents of articles of amendment and filing

requirement). Finally, Lydia changed the registered agent of Rio Starr Properties from Martin

---

[3] "If a corporation's charter . . . is forfeited under this chapter by the secretary of state, a stockholder, director, or officer of the corporation at the time of the forfeiture . . . may request in the name of the corporation that the secretary of state set aside the forfeiture . . . ." *Id.* § 171.313(a) (West 2002).

[4] If the corporation's charter . . . is forfeited under this chapter by the secretary of state and if the corporation requests the secretary to set aside the forfeiture under Section 171.313 of this code, the corporation shall determine from the secretary whether the corporation's name is available for use. If the name is not available, the corporation shall amend its charter . . . to change its name." *Id.* § 171.315 (West 2002).

to herself. It is undisputed that the Secretary of State accepted these filings, set aside the forfeiture,[5] and endorsed and filed the articles of amendment.[6]

In July 2004, Martin, individually and purportedly on behalf of Rio Starr Properties and its shareholders, filed suit against Lydia, Rio Starr Properties, and the Secretary of State in Travis County district court. Martin alleged that Lydia had made false representations in the articles of amendment that all Starr Properties's shareholders (i.e., both Lydia and he) had voted for the name change. Martin claimed that he had never been informed about the proposed name change or "the administrative dissolution of Starr Properties, Inc. . . . never voted in favor of the filing or the requests contained therein . . . [n]or would [he] have voted for it if he had known of Lydia's actions." Based on these allegations, Martin requested that "[p]ursuant to Article 7.01(2) and (4) of the Texas Business Corporation Act . . . the Court order the involuntary dissolution of Rio Starr Properties, Inc." *See id*. art. 7.01A(2), (4) (West 2003) (procedures for involuntary dissolution of corporation by Attorney General); Act of May 7, 1985, 69th Leg., R.S., ch. 128, 1985 Tex. Gen. Laws 592, 601 (amended 2005) (current version at Tex. Bus. Corp. Act Ann. art. 10.02 (West Supp. 2006) (stating that it is misdemeanor offense to sign false document on behalf of corporation for filing with Secretary of State)).[7] Martin further pled that he "believe[d] that Rio Starr Properties, Inc. is subject

---

[5] "If a request is made, the secretary of state shall determine if each delinquent report has been filed and any delinquent tax, penalty or interest has been paid. If [so], the secretary shall set aside the forfeiture . . . ." *Id.* § 171.313(b) (West 2002).

[6] "If the Secretary of State finds that the articles of amendment conform to law, he shall, when the appropriate filing fee is paid as required by law," endorse the articles, file the original, and issue a certificate of amendment to the corporation or its representative. Tex. Bus. Corp. Act Ann. art. 4.05 (West 2003).

[7] Because Martin filed this suit before the January 1, 2006 effective date of the Business Organizations Code, he relies on provisions of the former Business Corporation Act. *See id*. art.

4

to involuntary dissolution pursuant to Article 7.01 *et. seq.* of the Texas Business Corporations Act" and that "the Texas Secretary of State is the proper party to pursue the involuntary dissolution." Martin sought mandamus to compel the Secretary of State "to effect the dissolution of Rio Starr Properties, Inc. and to reflect such dissolution in the Secretary of State's records."

Martin also sought a declaratory judgment that: (1) the articles of amendment filed on March 13, 2003, to change the corporation's name and reinstate the charter were void; (2) Rio Starr Properties's charter remained forfeited and it was not a valid corporation; (3) he and Lydia owned all property formerly owned by Rio Starr Property as tenants-in-common, including the Highway 83 property in Rio Grande City; (4) he and Lydia each owned a 50% interest in the lease of the Highway 83 property and all proceeds received from it; and (5) he and Lydia were not partners. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 1997 & Supp. 2006) (Uniform Declaratory Judgments Act, "UDJA"). These requests were predicated upon (1) Lydia's alleged false statements in the articles of amendment that all shareholders had voted for the amendment and (2) Lydia's failure to follow the procedures in article 4.02 of the business corporations act to amend the articles of incorporation, including obtaining a resolution of the board of directors, submission of the resolution to the shareholders, and written notice. *See* Tex. Bus. Corp. Act Ann. art. 4.02. also sought attorney's fees under the UDJA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997).

---

11.02(A) (West Supp. 2006); Act of May 13, 2003, 78th Leg., R.S., ch. 182, § 17, 2003 Tex. Gen. Laws 267, 597.

The Secretary of State filed a plea to the jurisdiction based on sovereign immunity, which the district court granted. Following this ruling, Martin did not seek to further prosecute his claims against the Secretary in the district court,[8] nor did he seek to appeal the court's ruling on the plea to the jurisdiction. The Secretary's absence from these proceedings ultimately proves to be significant.

Lydia and Rio Starr Properties filed a motion to transfer venue, arguing that Starr County was the county of proper venue under section 15.001 and subsection 15.002(a) of the civil practice and remedies code. *See id*. §§ 15.001-.002 (West 2002). Subject to their motion to transfer venue, they filed a general denial and affirmative defense that Martin was estopped from obtaining his requested relief because his neglect of his duties as corporate secretary had caused the forfeiture of Starr Properties's charter.

In December 2004, Martin sought a partial traditional summary judgment on his request for involuntary dissolution of Rio Starr Properties, his declaratory judgment requests, and the defendants' estoppel defense. As grounds for involuntary dissolution, Martin relied upon article 7.01(A)(2) and (4) of the business corporations act, supported by his affidavit testimony that he had never voted on the articles of amendment as Lydia had represented. As grounds for declaratory

---

[8] Martin's "partial plea to the jurisdiction" appeared to be addressed solely to his declaratory judgment claims, not the mandamus. The district court's order states merely that it granted the "Plea to the Jurisdiction." But no subsequent reference to the Secretary of State appears in the pleadings of either party, and Martin deleted the Secretary of State from the caption of his pleadings. *See Webb v. Jorns*, 488 S.W.2d 407, 409 (Tex. 1972) (amended petition that omitted defendant operated as voluntary dismissal of that party). Further, the district court's final judgment states that it is final, disposes of all parties, and is appealable. *See Lehmann v. Har-Con Corp.*, 39 S.W.2d 191, 195 (Tex. 2001) (judgment is final for appellate purposes if it disposes of all pending parties and claims in record).

judgment regarding the corporation's status, Martin (1) submitted his testimony that Lydia had failed to follow the procedures under article 4.02 of the business corporations act for amending the articles of incorporation; (2) argued that the Secretary of State lacked statutory authority to reinstate the corporate charter more than three years after it had been forfeited, citing Tex. Bus. Corp. Act. Ann. art. 7.01(E); and (3) asserted that, at the time she filed the articles of amendment, Lydia lacked authority to perform any acts on behalf of the corporation because "a dissolved corporation exists for only limited purposes for thirty-six months after its dissolution," citing Tex. Bus. Corp. Act. Ann. art. 7.12.

The motion contained, in a paragraph before the prayer, a notice of hearing for January 18, 2005. The record reflects that on January 17 and 18, the defendants served Martin with a motion for continuance of the summary judgment hearing, together with a motion for leave to file same. The record indicates, however, that these motions were not filed until January 20, after the summary judgment hearing. On the hearing date, the district court granted Martin's motion on his causes of action for involuntary dissolution, declaratory judgment, and attorney's fee liability, and against the defendants' equitable estoppel defense. It ordered:

1. Rio Starr Properties, Inc. is hereby involuntarily dissolved;

2. Rio Starr Properties, Inc., formerly known as Starr Properties, Inc., is a dissolved corporation and does not validly exist under the laws of Texas;

3. Martin Garza and Lydia Garza Saenz are both tenants-in-common owners of all interests in property, real, personal, tangible, and intangible, formerly owned by Rio Starr Properties, Inc., f/k/a Starr Properties, Inc. . . . , including but not limited to any interest of Starr Properties, Inc. in the [Rio Grande City property];

7

4. The interest of Rio Starr Properties, Inc. f/k/a Starr Properties, Inc. in the lease agreement [for the Rio Grande City property] is now owned 50% by Martin Garza and 50% [by] Lydia Garza;

5. All cash in bank accounts in the name of Rio Starr Properties, Inc. and/or Starr Properties, Inc. is now owned 50% by Martin Garza and 50% [by] Lydia Garza;

6. All accounts receivable of Rio Starr Properties, Inc. and/or Starr Properties, Inc. are now owned 50% by Martin Garza and 50% [by] Lydia Garza; and

7. Any other assets of Rio Starr Properties, Inc. and/or Starr Properties, Inc. are now owned 50% by Martin Garza and 50% [by] Lydia Garza.

IT IS FURTHER ORDERED that this matter be set for trial on the issues of the amount of Garza's damages and attorney's fees.

Subsequently, the defendants obtained a March 24 setting on their venue motion and filed a motion to set aside the partial summary judgment arguing that the district court had violated rule 84 of the rules of civil procedure by proceeding to act on the summary judgment before ruling on their pending venue motion. *See* Tex. R. Civ. P. 84. The defendants submitted evidence that in August, their counsel had twice attempted to set their venue motion for hearing but encountered what might be termed a rough introduction to the Travis County local rules.[9]

---

[9] In his affidavit, the defendants' Rio Grande City counsel explained that, consistent with the practice in courts with which he was familiar, he submitted with his venue motion a blank order that the court could use to set a hearing. Travis County local rules require counsel to request a central docket setting from the court administrator, including an estimate of the time required for the hearing, and to notify counsel of the setting and time estimate. Travis County (Tex.) Civ. Dist. Ct. Loc. R. 2.2, 2.4. The rules specify that the court administrator will not mail setting notices, attorneys must give notice of the settings, and judges should not be requested to sign orders setting cases (except for show cause orders or "when some rule of law requires that an order for a setting be signed by a Judge and entered in the minutes by a Clerk."). *Id.* R. 1.4, 2.2. On August 25, counsel's blank order was returned by the Travis Court district clerk's office with a stick-on note, "Need a Hearing Set. THX." Even further confused by this communication, counsel deduced that the blank, unsigned order had been returned to him in error and re-sent the blank order to the district clerk with

Martin moved for final summary judgment on the amount of attorney's fees, setting a hearing for February 22. The defendants sought a continuance, arguing that the district court was required to first act on their pending venue motion. The defendants' motion to set aside the partial summary judgment and motion for continuance were denied.

On February 22, the defendants filed a response to Martin's motion for final summary judgment that included a plea to the jurisdiction. In relevant part, they urged that only the Attorney General had standing to seek involuntary judicial dissolution under articles 7.01(A)(2) and (4) of the business corporations act, depriving the court of subject matter jurisdiction to issue a decree or declaratory judgment on that issue. The district court granted final summary judgment awarding Martin $16,920 in attorney's fees. Lydia later filed this appeal.

**DISCUSSION**

Lydia brings three issues on appeal, in which she contends that (1) the district court lacked subject matter jurisdiction over Martin's claims and (2) the district court erred in adjudicating the partial and final summary judgment motions before ruling on the defendants' pending venue

---

a cover letter pointing out that "the date and time blanks to set the hearing were not filled out and the order was not signed." Counsel requested that "[i]f you intended to send me a signed, filled out order . . .please mail me one so I can know when this motion is set." The district clerk provided no further response.

motion.[10]  We agree that the district court lacked subject matter jurisdiction over Martin's claims[11] and need not reach Lydia's other issues.

Lydia presents two arguments that she contends go to the district court's subject matter jurisdiction.  Whether a court has subject matter jurisdiction is a question of law that we review de novo. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).  First, Lydia contends that Martin lacked standing to assert a claim for involuntary dissolution under article 7.01(A) of the business corporations code or to seek declarations that Rio Starr Properties is dissolved and was not revived.  Only the Attorney General, Lydia urges, can bring such a claim.  Standing is implicit in the concept of subject matter jurisdiction, and subject matter jurisdiction is essential to the authority of a court to decide a case. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993).  Without standing, a court lacks subject matter jurisdiction to hear the case. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005).  Second, Lydia argues that the district court lacked jurisdiction to adjudicate Martin's declaratory

---

[10] Specifically, in her second issue, Lydia complains of the district court's denial of continuances of the hearings on the partial and final summary judgment motions.  In her third issue, Lydia complains of the court's denial of the motion to set aside the partial summary judgment "because it had not held a hearing and issue[d] a ruling on [the] Motion to Transfer Venue."

[11] Because subject matter jurisdiction can be raised at any time, *see University of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex. 2004), it is of no moment that the defendants did not timely file a response to Martin's partial summary judgment motion, did not seek leave to file a late response, and do not complain on appeal of any deprivation of their opportunity to respond. *See, e.g.*, *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979) ("With the exception of an attack on the legal sufficiency of the grounds expressly raised by the movant . . . the non-movant must expressly present to the trial court any reasons seeking to avoid movant's entitlement.").

judgment claims challenging the legal validity of the Secretary of State's actions because the Secretary is no longer a party. We agree with both contentions.

Texas courts have long adhered to the principle that "[s]ince a corporation is a creature of the state by which it is chartered, the right to dissolve the corporation without its consent belongs exclusively to the state. . . . Whether the franchise of a corporation is to be forfeited depends upon the will of the body that created it." *State v. Dyer*, 200 S.W.2d 813, 815-16 (Tex. 1947). We applied this principle in *Mulcahy v. Houston Steel Drum Co.*, 402 S.W.2d 817, 820 (Tex. Civ. App.—Austin 1966, no writ). In *Mulcahy*, we addressed whether a former director, officer, and shareholder of a corporation whose charter had been judicially forfeited for nonpayment of franchise taxes had standing to intervene in opposition to the corporation's bill of review proceeding seeking to set aside the forfeiture. The trial court struck Mulcahy's petition, and we affirmed the court's judgment, reasoning that Mulcahy would not have had standing to bring the initial judicial forfeiture action for nonpayment of franchise taxes:

> It is the rule that where a corporation has been formed under color of law, only the State can question its corporate existence, and that in a direct proceeding wherein the State is a party, and the action is in the nature of a quo warranto proceeding.

*Id*. at 819 (quoting *Miller v. Davis*, 150 S.W.2d 973, 978 (1941)). We added, "It is well settled that only the Attorney General of the State can raise these questions and he does it by quo warranto action. Quo warranto actions can be brought only in the name of the Attorney General and they are intended to protect public interests, not merely private interests." *Id*. at 820.

11

These principles deprive Martin of standing. His standing to assert his request for involuntary dissolution under article 7.01(A) of the business corporations act, moreover, is belied by the terms of that provision:

> A corporation may be dissolved involuntarily by a decree of the district court of the county in which the registered office of the corporation is situated or of any district court in Travis County *in an action filed by the Attorney General* when it is established that it is in default in any of the following particulars:
>
> . . . .
>
> (2) The original articles of incorporation or any amendments thereof were procured through fraud; or
>
> . . . .
>
> (4) A misrepresentation has been made of any material matter in any application, report, affidavit, or other document submitted by such corporation pursuant to this Act.

Tex. Bus. Corp. Act Ann. art. 7.01A (West 2003) (emphasis added). It is well established that only the Attorney General may seek a judicial decree of involuntary dissolution of a corporate charter. *See Mulcahy*, 402 S.W.2d at 819-20; *Laurel Land Mem'l Park, Inc. v. Pinto*, 358 S.W.2d 729, 731 (Tex. Civ. App.—Waco 1962, writ ref'd n.r.e.) (holding that court should have sustained plea to the jurisdiction because suit challenged corporate authority under its charter and exclusive remedy for such challenge was through quo warranto proceedings instituted by Texas Attorney General); *Millsaps v. Johnson*, 196 S.W. 202, 210 (Tex. Civ. App.—Amarillo 1917, writ ref'd) (court erred in declaring charter forfeited where "[S]tate of Texas was not a party to the suit, and the record

12

shows that the company is still a legally existing corporation"); *see also* 20A Robert W. Hamilton, *Texas Practice: Business Organizations* § 45.18 (2005).

The same is true of Martin's claims for a declaratory judgment that Rio Starr Properties is dissolved, at least to the extent it is based upon allegations of Lydia's false statements or other misdeeds underlying the facially valid acts of the Secretary of State in amending and reinstating the corporate charter. *Mulcahy*, 402 S.W.2d at 819 (where corporation has been formed under color of law, only State can question its corporate existence).

On the other hand, Texas courts have also recognized that the UDJA may afford a litigant whose rights are affected by a statute (or the violation of a statute) the right to obtain a declaration of those rights under the statute. *See, e.g.*, *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 686 (Tex. 1995); *Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 445-46 (Tex. 1994); *Hays County v. Hays County Water Planning P'ship*, 106 S.W.3d 349, 359 (Tex. App.—Austin 2003, no pet.); *Texas Mun. Power Agency v. Public Util. Comm'n,* 100 S.W.3d 510, 515-16 (Tex. App.—Austin 2003, pet. denied). Martin's claim seeking a declaration that the Secretary of State lacked statutory authority to reinstate Starr Properties's corporate charter resembles this type of claim. We need not address whether this type of claim falls outside the rule of *Mulcahy* or if Martin

would have standing to assert it[12] because even if so, the district court would lack subject matter jurisdiction because the Secretary of State is not joined as a defendant.

We have frequently recognized that if a state agency or officer were not joined in a UDJA suit challenging whether it acted within its statutory authority, "the right to a declaration would have no practical effect." *Texas Mun. Power Agency*, 100 S.W.3d at 516 (citing *City of La Porte v. Barfield*, 898 S.W.2d 288, 297 (Tex. 1995)). Otherwise, the agency or officer would not be bound by the declaration and could freely disregard it. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(a) (West 1997) ("A declaration does not prejudice the rights of a person not a party to the proceeding."). Martin suggests that, for this reason, the district court had subject matter jurisdiction to declare the validity of the Secretary of State's reinstatement of Starr Properties's charter without joining the Secretary himself, because Lydia and Martin were the corporation's sole shareholders and are the only persons affected by the declaration, and the court could completely determine their justiciable controversy. *See Clear Lake City Water Auth. v. Clear Lake Util. Co.*, 549 S.W.2d 385, 389 (Tex. 1977). We disagree because the controversy regarding the Secretary of State's statutory authority as it bears upon the validity of Starr Properties's state-conferred corporate charter, like legislation or agency rules, inherently concerns the public interest, not to mention the rights of third parties who may have claims or contracts with the corporation. Unless the Secretary is joined, such

---

[12] Nor do we express any opinion concerning the merits of such a claim. *Compare* Tex. Bus. Corp. Act. Ann. arts. 7.01(E), 7.12, *with* Tex. Tax Code Ann. § 171.313(a); *see also Emmett Props., Inc. v. Halliburton Energy Servs., Inc.*, 167 S.W.3d 365, 370 & n.4 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (distinguishing between forfeiture under business corporation act and tax code and noting that payment of delinquent taxes under section 171.313 of tax code allows Secretary of State to set aside forfeiture of corporate charter "at any time"); *McCown v. Kittel*, 480 S.W.2d 47, 50-51 (Tex. Civ. App.—Fort Worth 1972, writ ref'd n.r.e).

a declaration "would have no practical effect," *Texas Mun. Power Agency*, 100 S.W.3d at 516, regarding Starr Properties's legal existence and would be purely advisory. A declaratory judgment "requires a justiciable controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163-64 (Tex. 2004).[13]

We accordingly sustain Lydia's first issue.

## CONCLUSION

Because the district court lacked subject matter jurisdiction to adjudicate Martin's claims, we vacate the district court's judgment and render judgment dismissing Martin's claims.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Vacated and dismissed for want of jurisdiction

Filed: January 12, 2007

---

[13] Martin urges that the Secretary of State was *originally* a party before obtaining a favorable ruling on his plea to the jurisdiction, suggesting that any jurisdictional problems were the Secretary's fault because he "chose not to participate in the case." To the contrary, it was Martin's burden to plead, prove, and preserve error on his claims, if possible, in a manner that would entitle him to the relief he sought.

15